In re RS AIR, LLC, Kelly Singer appearing for appellants, Jennifer Hayes appearing for appellee. Good morning. All right. Let's see, Mr. Singer, do you wish to reserve any time? Yes, Your Honor, Kelly Singer on behalf of NetJets, I would like to reserve four minutes. Very much, you may commence. Thank you, Your Honor. Your Honor, you have all the papers before you. I trust that the panel has read everything, so I will just highlight a few different things that I just want to point out, as well as address any questions that the panel may have. I'll first start out with the legal test, Your Honor. Contrary to the debtor's argument, we do not concede that the correct legal test was applied here. And what I'm specifically talking about here is the test about what it means to be engaged in business or commercial activities. Every single case that's cited by both parties, so every single case that addresses eligibility under subchapter five, addresses what it means to be engaged in business or commercial activities as something that's undertaken with a view towards income or profit. And it's that last part that we submit that the bankruptcy court completely ignored. And what we now know, Your Honors, is that through the debtor's own concessions of the confirmation hearing, as well as the debtor's own testifying expert, we know that this debtor never reported income since at least 2004. And contrary to prior evidence that was submitted by the debtor, this entity was actually set up to be a tax benefit for its member, its sole member, Mr. Pearlman. It was never intended to generate income or profit. So are you saying that whenever there's an entity that's set up for a tax benefit that they can't file subchapter five? I think, Your Honor, that whenever there is an entity that's set up solely for a tax benefit for a member, a non-debtor party, then I think the answer is yes. What can bring an entity like that into subchapter five realm would be if an affiliate filed for bankruptcy and qualified for subchapter five, then that affiliate through the affiliate rules can also qualify for subchapter five. But to answer Your Honor's question, if it's a tax benefit, if it's a tax benefit solely for the owner of the debtor, not the debtor itself, then the answer is no, that would not qualify for what it means to be engaged in business or commercial activities because that's not the type of entity that is set up with a view towards income or profit. It's purely a tax benefit for something else. So they have to be looking to make a profit. They have to be looking to generate income or profit. And there is a difference there because not every business is successful in generating income and not every business is successful in generating a profit. So it's either or a view towards generating income or profit. And what we know about this debtor through its own concession and through the testimony of its expert at the confirmation proceedings is that this entity was not set up to generate income or profit. It didn't have that view, it didn't have that undertaking to generate income or profit. So the purpose has to be generating income. I would say that. It has to be a commercial enterprise generating income for our profit. Is that what you're saying? It's got to be doing some sort of activity with a view towards generating income or profit if that answers Your Honor's question. Okay. So what about non-profit? Right. I'm sorry? What about a non-profit? Are you telling me a non-profit can't file a Subchapter 5 case? Absolutely not. Non-profits generate income. They just don't report a profit. They don't have profit. They don't have equity holders. Non-profits absolutely generate income. They would qualify under Subchapter 5 if the non-profit was undertaking, if the non-profit was engaged in business or commercial activities with a view towards generating income. I don't understand what you mean by with a view towards. The non-profit's purpose is to, you know, do good things and generating the income is not the purpose. Generating the income is the means to the purpose, but that's not the purpose. The income is what allows it to do the non-profit activity. So it is generating charitable donations. That's income. It's doing those sorts of things. It's not set up solely for a tax benefit of an owner. Why is it that, I'm teasing at Jorgeman, I mean, if generating income to, you know, or not even, I don't even know if you'd call it income, if you're dealing with money, you're dealing with services, you're dealing with activities to achieve a purpose, why is that different from a tax entity here that is doing things in order to achieve tax benefits? It's not tax benefit. If that's maybe not as laudable, I get you that. Well, two things, your honor. Number one, the sole purpose, the primary purpose of this entity was to generate a tax benefit for its owner, not to generate income or profit. So that's number one. But number two, if an entity is set up for a tax, if an entity is set up as a tax benefit for itself, then that might qualify because that's for itself. But here it's for the owner, Mr. Perlman, multi-millionaire tech guy, not a bankruptcy debtor. And this is what the debtor conceded to at confirmation. And this is what its expert testified to. They had not this entity had not reported any income since at least 2004. And at confirmation proceedings was the first time that we learned that this entity was established to be a tax benefit for its owner, not for itself, which is contrary to what was being argued before about tax depreciation for RSA. And I think that's even in one of the judge's opinion about tax benefits for RSA at confirmation proceedings. We learned that that was not the case is tax benefits for the purpose or anything like that. That is its primary purpose of existence. That's that's a huge difference between a nonprofit that does generate income, but no profit, admittedly no profit. And again, the test captures that because the test is, are you engaging in business or commercial activities with a view towards generating income, which could not be profitable or generating profit, which assumes income and profit? The second thing, your honor, that I'd like to point out, your honors, that I'd like to point out is the burden of proof. Virtually every single case that it has addresses that has addressed this issue puts the burden of proof on the debtor to show that it's eligible for subchapter five when an objection is made. The bankruptcy court did not do that here. Now, the debtor argues that, well, that doesn't really matter because at confirmation, the confirmation elements have to be proven by the debtor and the debtor has the burden at that moment. But that doesn't correct the fatal flaw in in in the debtor being placed on that just because at confirmation, the bankruptcy court said not revisiting this issue because of the law of the case. I already decided this issue when I ruled previously when that just had the burden. And so at no point during the bankruptcy was subchapter five eligibility determined with Jets. I'm sorry, with with the debtor having the burden, it was always that led at and and that just heals. And your honors, that that brings us to the next issue that I'd like to address, and that is the law of the case. The law of the case doctrine does not apply to interlocutory orders in the bankruptcy court, use the law of the case to basically shut down its analysis. It didn't even start it, but shut down its analysis at confirmation proceedings when we had this new evidence, this new and substantially different evidence from the debtor's own concessions made during confirmation and from the debtor's own testifying expert about not being set up to generate income or profit, not not reporting any income since at least 2004. Also, in being set up as a tax benefit for its owner and additionally, that that benefit wasn't even a benefit to the owner because the owner would have to invest more money than what the tax benefit to the owner actually ended up being. And so the law of the case doctrine doesn't apply to interlocutory orders. But that's exactly what the judge did here. It said, I'm not going to revisit this issue because the law of the case doctrine, the panel has recognized that the designation orders are interlocutory. And that's why that's why it denied our motion for leave pending appeal when the orders first came out. But even if the law of the case doctrine does apply, which we submit that it doesn't, there's a clear exception here. We have substantially we have new and substantially different evidence. And that's the evidence about the debtor's concession, the not reporting income since 2004 and everything that the experts said that that evidence goes directly to the crux of the issue about what it means to be engaged in business or commercial activities. Because like I said before, every single case that has addressed this issue talks about being engaged in business or commercial activities for the purpose or with a view towards generating income or making a profit. If this entity, as the expert testified to and as the debtor conceded for the first time that confirmation isn't set up to generate income or profit, well, then it doesn't meet the definition of what it means to be engaged in business or commercial activities that every single case that has addressed this issue sets forth. The last issues, your honor, that I'd like to I'd like to talk about is just the overall policy here, and I'm sure the panel knows this, but this is the first substantive appeal regarding eligibility for subchapter five. There is no appellate decision at any level, according to our research, about what it means to be engaged in business or commercial activities for purposes of subchapter five. And NetJets submits that the policy implications here are are exceedingly important because with this particular case, we have a single member LLC as of the petition date and for its entire existence, and this is not disputed, never had any employees. As of the petition date, it had no business operations. As of the petition date, it had no executory contracts. As of the petition date, it had virtually one creditor and that was NetJets, who held 98 percent of the debt. The four other creditors. Yes, you get to your question for that. My problem is that this entity, you think this entity, you're not saying this entity can't file bankruptcy, right? Absolutely not. That is not what this is about. We're not saying that this entity doesn't say only subchapter five is barred. That's correct. This you want them to be. Do you think this is the kind of case that Congress wants to see in a full vote? Chapter 11. And if so, why? Well, we did. That's a great question. We did file a motion to dismiss this case early on and that was denied and we have not appealed that. But at the very least, this bankruptcy case, I think deserved, I think could be in chapter seven. I think there might be an argument that it could be in a normal chapter 11, but in a normal chapter 11, where you only have one creditor, NetJets, it's going to be hard to confirm a plan. And so I guess to address your question, your comment first, we are not here arguing that this debtor does not qualify to file for bankruptcy. I think there could be a debate about what that bankruptcy is, whether it's chapter seven or chapter 11. But what our appeal is about is that this particular company does not qualify for subchapter five under the facts and circumstances as they existed as of the petition mandate. And especially we now know from the debtor's own concession and from the testify, the testimony from its own expert, this entity was not set up to generate income or profit that goes to the crux of what it means to be to be engaged in commercial or business activities for purposes of subchapter five. And from a policy perspective, as practitioners, as bankruptcy judges who probably see a lot more of these cases, we know what subchapter five was for. We know what Congress was intending here. And it's in virtually every case that the parties cited. Subchapter five is to address the unique business needs of small business debtors who are trying to navigate through what was a cumbersome chapter 11 process, unsecured creditors committee, the time, the expense, all these things. Subchapter five was meant for those mom and pops to put their entities, really their livelihoods into a bankruptcy process that wasn't as cumbersome as a normal chapter 11, but also not force them into chapter seven because they couldn't meet the absolute priority role. That's what subchapter five is for. That is not this case. This case wasn't even intended to generate income or profit. And its purpose was to serve as a tax benefit for its owner, again, not the debtor, for the owner. That's not what subchapter five is about, and I would like to reserve the rest of my time unless the panel has any questions, I'd much rather address those in reserve time. We'll let you reserve time, I think, unless someone jumps up. So it's toughest time there. And thank you and goodness sakes. Good morning, Your Honors. Jennifer Hayes of Finestone Hayes, LLP, appearing on behalf of the Appley RSAIR LLC. Your Honor, this, Your Honors, this appeal boils down to a narrow issue, which I will address first before turning to NetJet's law of the case arguments. And the issue is whether the bankruptcy court abused its discretion in determining that subchapter five debtor. In determining whether the bankruptcy court abused its discretion, the panel conducts a two part inquiry. Number one, it reviews de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested. And number two, if it did, the panel considers whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support and inferences that the facts in the record. The citation in support of this two part test is set forth in a related appeal and an order entered by the bankruptcy appellate panel last May. And that is Appeal Number 21-1053, and it's at ECF 19, which has the case law, Ninth Circuit case law on this. In the case law on the issue of subchapter five eligibility provides not what Mr. Singer says it provides, but it provides that the inquiry of subchapter five eligibility is a totality of the circumstances, taking into account the particular facts and circumstances of each individual case. It is clear from the papers that the bankruptcy court identified and applied this totality of the circumstances correct legal rule. Accordingly, the panel may only reverse if the bankruptcy court's application of the legal standard to the facts of this case was illogical, implausible, or without support from the record. The bankruptcy court correctly weighed a number of case specific facts to determine under a totality of the circumstances that RSA activities qualify as commercial or business activities eligible for subchapter five. These facts include the following. RSA was created and organized in 2001 to receive a valuable tax depreciation benefit for its owner through its business operations. RSA was in the business of buying, owning, and selling fractional jet interests. RSA was in the business of providing flights to RSA affiliated entities and earned revenues from some of those flights in the form of reimbursements. We're looking at what business activities were engaged that somebody was engaged in at the petition date. They haven't engaged in any purchasing or selling of jets or providing flight services for many, many years. And their only activity in the last five years has been litigation, right? Your Honor, as of the petition date, the business activities, in addition to the litigation related activities that included paying recurring international aircraft registry fees, remaining in good standing as a Delaware Limited Liability Entity Company, staying current on its annual California Franchise Tax Board taxes, keeping current with its obligations to the United States Internal Revenue Service, including filing its schedule C's each year and paying any federal taxes due, and maintaining bank accounts. Paying fees and litigating, right? And according to Mr. Singer, not really litigating, you know, in his client's view, you're basically absent from the litigation. So tell me, tell me why Mr. Singer's view of the definition of engaged in business or commercial activities is wrong? And why, why those activities work and why the judge was correct in finding so? Your Honor, because under the totality of the circumstances, RSA activities qualify as business or commercial related activities, which courts, as the law is developing, have defined exceedingly broadly and similar cases analogous to this one in which there were similar business activities or in which the normal business activities were paused for a period of time, or as is the case here, you have Offer Space, which is 629-BR-299, you have Port Arthur, 629-BR-233, which is a Southern District of Texas case from 2021. Third case, Vertical Mack Construction, which is a Lexus site. This case is from the Middle District of Florida from 2021. And it's 2021 Bankruptcy, Lexus 2285. And so this has come up in multiple contexts where the debtor doesn't, every debtor is unique. And that's why the courts look to the totality of the circumstances. Is that a rule as part of the definition of engaging in business and commercial activities that there has to be an income or profit motive? No, Your Honor, that specifically is not a rule. And the cases that Mr. Singer cites to for that proposition are Johnson and Blue. Johnson is a Northern District of Texas case. And Blue is Middle District of North Carolina. Those both involved individual debtors, meaning human beings, not entities. And in Johnson, the court held that services provided by a W-2 employee of a non-debtor company, even an individual, and this individual had the title of president, but they were fundamentally W-2 employees. And the court said that does not qualify as a commercial or business activities for purposes of Subchapter 5 eligibility. Like Johnson, Blue involved an individual debtor rather than a corporate debtor. And Blue interpreted Johnson to mean that an individual is engaged in commercial or business activities when such individual participates in the purchasing or selling of economic goods or services for a profit. That type of analysis I have not seen in any other case law. Rather, it's uniformly looking at the totality of circumstances and determining whether it's commercial or business activities, which include things like litigating. They include things like maintaining a bank account. They include things like filing your tax returns. These are, what is it if it's not commercial or business activities? I mean, an entity, I can't, philosophically, what do you call an entity that does that? And yeah, they pause, it's normal flight operations and buying and selling fractional jet interest was paused for a time being. And they have an intent to resume, and that's OK. But in the meantime, they're engaged in multiple other normal corporate activities, which I have detailed and which the court relied on and found. And it makes sense because the requirement that a corporate debtor must be profitable to proceed under subchapter five would produce a nonsensical result in providing relief only to profitable businesses that don't need it and denying relief to unprofitable companies that do. And to the extent that profitability does have any relevance to subchapter five eligibility for entities, it is but one of the myriad factors considered by the courts in applying the totality of the circumstances. While RSA did not generate a profit for its member, Mr. Perlman, in the strict accounting definition of income less expenses, it provided millions of dollars in tax benefits for its member. Plus, it generated substantial revenue from third party flights and jet share sales. And I've discussed the other activities that engaged in pre-petition, which I will not repeat. So in RSA's position and it's clear from the record that the bankruptcy court did not abuse its discretion in determining that RSA is eligible for subchapter five relief. Its factual findings are carefully supported by the record and its application of these factual findings to the totality of circumstances legal test is not illogical, implausible or without support from the record. Does your honor have any other questions about the profitability aspect before I move on to the law of the case? I don't, but also don't forget to address the burden of proof issue. Yes, your honor. I will do so. Thank you. OK, with respect to the law of the case in its original and amended memorandum decisions in support of RSA's third amended plan, which are ECF 308 and 312, the bankruptcy court properly applied the law of the case doctrine, which is set forth in the case of Thomas versus Bible. And for the doctrine to apply, the issue in question must have been decided either expressly or by necessary implication in the previous disposition. And a court may revisit a previously resolved questions only under five inapplicable circumstances, which Mr. Singer cites to one of those five is if there is evidence on remand that is substantially different. And you say, which I don't think I agree with, that if I make a decision in a case and it's interlocutory and the case goes on and I change my mind, I can't. I know I've made an error. I know there's a problem. I can't address it. No, I'm not taking that position. I'm not going so far as saying you could not address it. I am saying that the court was entitled to rely on the law of the case doctrine and did. And but but even if she hadn't, it doesn't change the outcome because the this alleged, you know, materially changed evidence is not what as it's characterized to be. NetJets, for example, asserts that Matthew English, who was the expert witness, that his testimony revealed a hidden truth that RSA had not generated income. But NetJets mischaracterizes his testimony as well as RSA's representations on this issue. RSA has consistently stated that while it generated revenues, it did not operate at a profit. Rather, it was periodically reimbursed for affiliate third party flights, either a break even or for a profit. And Mr. English's testimony in support of the third amended plan is that RSA had not reported, quote unquote, net income, meaning income as in inflows minus outflows. And this testimony is wholly consistent with RSA's previous statement and the bankruptcy court's findings. Further, NetJets' repeated statement that Mr. English stated that RSA had no income since 2004 misreads the testimony. Mr. English testified that he only substantively reviewed documents from 2014 to 2020, despite receiving some documents that were back to 2004. And he didn't see the transaction in 2013 involving the sale of a jet share, which generated revenue for NetJets. And that doesn't mean that it didn't exist. It just wasn't part of his review. And NetJets asserts that the tax benefit is actually or seems to assert that the tax benefit is a loss. And this this misunderstands the nature of tax benefits and and contradicts NetJets' own marketing materials, touting the tax benefit of fractional jet ownership. NetJets disputes Mr. English's financial model and which is a red herring because it's it's just not relevant to this context. It might be relevant to projected disposable income analysis, for example, which is not an issue here. And in the argument purposely misunderstands the bookkeeping methodology used by RSA, which is the booking of income as contra expenses in a manner that generates and did generate millions of dollars of tax benefit. So, in summary, Mr. English's testimony just reinforced and restated evidence that was previously presented to the bankruptcy court by RSA. And it was in no way substantially different such that the bankruptcy court was precluded from applying the law of the case doctrine. In terms of the burden of proof that your honors have asked about, I'm going to I will summarize it. Let me first start by saying it doesn't it doesn't change the outcome, whether NetJets bears the burden or whether RSA bears the burden. The burden of proof was met here to establish subchapter five eligibility for the reasons I've stated in terms of case law. There's a Ninth Circuit 2001 Scovis versus Henrickson, which conceptually it's this that the movement bears the burden of proof. And so here the movement was NetJets to strip RSA of its subchapter five eligibility. So one of the cases, although it's not the only one, is Scovis versus Henrickson, which is 249 F third 975. It's the only one that Judge Hammond relied on, though, right, was the Scovis case, which is really somewhat of a different situation. It was a different situation. It just conceptually the underpinning for her ruling, as I understand it, was that the movement bears the burden of proof. But ultimately, it doesn't matter who bears the burden here because it was established for the reasons set forth. And I acknowledge that there are two developing lines of case law, one in this context, one that puts the burden on the debtor and one that puts it on the moving party. And RSA believes the standard has been met under either, that the burden of proof has been established. And it's irrelevant because the bankruptcy court shifted the burden to RSA or plan confirmation, finding that the debtor bore the burden to prove by a preponderance of evidence that the plan complied with confirmation requirements and that the same burden applies in a subchapter five. And that a debtor's eligibility is a fundamental requirement for plan confirmation. And the court shifted that on to RSA for plan confirmation. But again, ultimately, under any allocation of the burden of proof, RSA has been shown to be eligible for subchapter five relief because at all relevant times, it has been and continues to be actively engaged in commercial and business activities pursuant to Section 1182 1A. I want to thank each of your honors for listening to my oral argument. We'll take, we'll now go back to Mr. Singer, who has a little less than a minute, I think. Thank you, Your Honor. Kelly Singer on behalf of NETJETS. Judge Brand, you had asked the question whether or not that undertaking for profit or income is part of the test. NETJETS submits that it is part of the test. Every single case that addresses this issue talks about what it means to be engaged in business or commercial activities. And they specifically state undertaken or with a view or for the purpose of generating income or profit. That's N. Ray Johnson, N. Ray Blue, N. Ray Vertical Matt Construction, including the, I think you pronounce it, Iqaluit case that Judge Hammond cited, that she cited in her confirmation order. That, too, has that has that language in it about a view towards income or profit. And so and so I wanted to emphasize that. The other thing, Your Honor, is that this case is not just about an abuse of discretion. Law of the case is reviewed de novo. If the bankruptcy court applied the incorrect law, i.e. it didn't look at whether or not this was undertaken with a view towards profit or income, then that's a misapplication of that. That's applying the wrong law. That's an abuse. That's that's de novo review. The last thing, Your Honors, that is that the information is substantially different. What Ms. Hayes stated was that. Net or that that the debtor had previously argued that that it just didn't make a profit. It's one thing to say that we were out there in the world doing things, we just didn't quite make a profit or we just didn't quite make income. It's a totally different thing to say at confirmation. This entity wasn't set up to make profit. Or income, it was set up as a tax benefit for its owner. Big difference there. And it's substantially different. Thank you, Your Honors. I see my time is out. Unless you have any questions for me, I really appreciate your time. It's a good argument for both of you. Any questions from the panel? Oh, thank you.  All right. We will be in recess. Thank you, Your Honors.
judges: TAYLOR, BRAND, GAN